NOT DESIGNATED FOR PUBLICATION

No. 117,204

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ERIC DARNELL SWOPES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; RONALD E. WURTZ, judge pro tem. Opinion filed June 29, 2018. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., MCANANY and BRUNS, JJ.

PER CURIAM:  Eric Darnell Swopes appeals his jury conviction for burglary, theft, and criminal damage to property. He contends the district court erred when it admitted the audio recorded by the body cameras of two police officers. Swopes argues that the district court violated his rights under the Fifth Amendment to the United States Constitution by admitting the recordings. In response, the State argues that the district court properly admitted the recordings and that Swopes objected to the giving of a K.S.A. 60-455 instruction to the jury. The State also argues that even assuming the district court erred in admitting the recordings any such error was harmless due to the overwhelming evidence of guilt presented at trial. For the reasons set forth in this opinion, we affirm.

1

FACTS

At around 3 a.m. on June 20, 2015, a woman heard the sound of glass breaking. She woke up her husband and they saw the shadow of a person inside the Rewards Wireless store, which was located near their residence. They also saw a man leaving the store through a broken window carrying a large bag. The couple called the police and gave a description of the man. In addition, another neighbor reportedly heard the sound of glass breaking and saw the shadow of a person in the store.

Several police officers responded to the dispatch regarding the burglary. One of the officers, Jason Oyler, drove to an area north of the Shunga Creek—which is a few blocks from Rewards Wireless—and saw a man carrying two black items. Officer Oyler parked his car and confronted the man as he was coming around a corner of a building. However, the man was no longer carrying anything. Looking around the corner, Officer Oyler found a black bag and a black metal cash drawer. At that point, Officer Oyler took the man—identified as Swopes—into custody and escorted him to his patrol vehicle. At some point, police officers learned that a cash register drawer—with a serial number that matched the one found near Swopes at the time of his arrest—was missing from the Rewards Wireless store.

The State charged Swopes with burglary of a nondwelling, theft, and criminal damage to property. At his jury trial, three witnesses described hearing glass breaking and seeing someone inside the Rewards Wireless store in the early morning hours of June 20, 2015. One of the witnesses testified that she saw the man run north, toward the Shunga Creek, after exiting from the Rewards Wireless store.

Officer Michael Ahlstedt testified he was dispatched to Rewards Wireless with his K-9 partner, Kaiser, and arrived around 3:10 a.m. Officer Ahlstedt and Kaiser tracked the suspect from the Rewards Wireless store to within 20 feet of where Officer Oyler and

2

Swopes were standing. Officer Ahlstedt did not see anyone else while tracking the suspect from the Rewards Wireless store until he saw Officer Oyler and Swopes.

Officer Oyler also testified about the events surrounding Swopes' arrest. He testified that he saw a black male—later identified as Swopes—wearing a dark-colored shirt and carrying two black objects, one of which appeared to be rectangular. While parking his vehicle, Officer Oyler briefly lost sight of Swopes but then saw him coming around the corner of a building without anything in his hands. After identifying himself, Officer Oyler had Swopes accompany him back around the corner of the building. In doing so, Officer Oyler found a black bag and a cash register drawer.

Officer Oyler testified that he took Swopes into custody and placed him in his patrol vehicle. Officer Oyler activated his Axon body camera. Evidently, Officer Josh Miller was also wearing a body camera. Because Swopes had a small cut on the palm of his hand, Officer Oyler called for medical assistance. However, Swopes initially declined treatment and claimed that his hand was not injured.

The State played for the jury three video clips—with audio—that Officer Oyler's body camera recorded. In the first video clip, Swopes tells Officer Oyler he wants to speak to his lawyer or go to jail. The video continues with Officer Oyler telling the other officers that Swopes was "lawyering up" and was not talking to him. In the second clip, Swopes refuses to exit the patrol vehicle to allow medical personnel to examine him and states that he was not bleeding. When Swopes refused to get out, the clip shows Officer Oyler said that he would drag Swopes from the patrol vehicle if he did not cooperate. After Swopes got out of the patrol vehicle, the medical personnel discovered a cut on his hand that they treated. In the video, Swopes repeatedly requested that the officers take him to jail. Officer Oyler again is heard telling other officers that Swopes had "lawyered up" and was not talking to him. In the third video clip, Officer Oyler asks Swopes to exit

3

the patrol vehicle again so officers may search him. Swopes repeatedly says that he wants his lawyer.

Officer Miller testified there was blood on the bag and on the cash register but not on the yard or sidewalk. Officer Miller indicated he had just been on another call to the same area and had walked around the perimeter of the building. He did not see the bag or the cash register at that time. He did not see anyone outside. The State also introduced his body camera footage. Officer Miller indicated Swopes was not being very cooperative. Officers mention that Swopes "lawyered up" twice.

The State presented testimony at trial that investigators found blood on the cash register drawer taken from the Rewards Wireless store. The Kansas Bureau of Investigation (KBI) compared swabs taken from the blood on the drawer with DNA samples collected from Swopes pursuant to a warrant. According to the testimony of Stephanie Cline, the KBI crime lab determined that the blood specimen collected from the cash register drawer matched Swopes' DNA profile.

After deliberation, the jury ultimately convicted Swopes on all of the charges. The district court sentenced Swopes to 30 months for burglary, with concurrent sentences of 6 months for theft, and 6 months for criminal damage to property. The district court further sentenced him to 12 months of postrelease supervision.

Thereafter, Swopes filed a timely notice of appeal.

ANALYSIS

On appeal, Swopes contends that the district court erred in admitting the audio portions of the videos taken from Officer Oyler and Officer Miller's body cameras. In particular, Swopes argues that it was error to admit audio of him invoking his right to

4

remain silent as well as statements that he was being uncooperative. Citing *Doyle v. Ohio*, 426 U.S. 610, 618-19, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), and *State v. Edwards*, 264 Kan. 177, 195, 955 P.3d 1276 (1998), Swopes asserts that his Fifth Amendment rights were violated.

In response, the State contends that the district court did not err in admitting the audio portions of the body camera videos into evidence. The State also argues that any potential error was harmless because the evidence of Swopes' guilt was overwhelming. Based on our review of the record, we agree with the State that evidence of Swopes' guilt was indeed overwhelming. Because we agree with the State—that any error was harmless—we do not address whether the district court's admission of the audio into evidence constituted error.

Here, Swopes alleges a constitutional error. As such, in order for the error to be harmless, the party benefitting from the error must establish "beyond a reasonable doubt that the error complained of . . . did not affect the outcome of the trial in light of the entire record, *i.e.*, proves there is no reasonable possibility that the error affected the verdict." *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012). Because the State benefitted from the alleged error in this case, it has the burden of proof.

A review of the record reveals that Officer Oyler was dispatched, at approximately 3:10 a.m., to a burglary in progress at the Rewards Wireless store. Within a few minutes, Officer Oyler responded to the area north of Rewards Wireless to set up a perimeter. He observed a man who he believed to match the description given by the dispatcher carrying two objects, one of which appeared to be rectangular. Officer Oyler parked his patrol vehicle and approached the man as he came around the corner of a building a few blocks from the Rewards Wireless store. Although the man—later identified to be Swopes—did not have anything in his hands at the time, Officer Oyler had him

5

accompany him around the corner where a black bag and a black rectangular box—which appeared to be a cash register drawer—were found.

When taking him into custody, Officer Oyler noticed that Swopes had a cut on his hand. Moreover, investigators discovered that the object found at the scene was indeed a stolen cash register drawer from the Rewards Wireless store. In addition, Officer Ahlstedt and his K-9 tracked the suspect's path from Rewards Wireless store to within 20 feet of the location where Officer Oyler had confronted Swopes. Finally, the KBI lab was able to match blood found on the cash drawer to Swopes' DNA profile.

Assuming the district court erred when it admitted some or all of the audio from the body cameras, we are convinced beyond a reasonable doubt that the alleged error did not affect the outcome of the trial in light of the entire record. In other words, we conclude based on our review of the record that there is no reasonable possibility that the error affected the jury's verdict. We, therefore, affirm Swopes' convictions.

Affirmed.